# UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | |
| | : | Case No. 1:16-bk-03844-HWV |
| ROBERT P. CONRAD, JR., and LISA | : | |
| LANOCHA CONRAD | : | |
| | : | Chapter 13 |
| Debtor | : | |
| | : | |
| ROBERT P. CONRAD, JR., and LISA | : | |
| LANOCHA CONRAD | : | |
| | : | Motion to Modify Plan |
| Movant | : | 11 U.S.C. §1329 |
| | : | |
| CHARLES J. DEHART, III | : | |
| STANDING CHAPTER 13 TRUSTEE | : | |
| | : | |
| Respondent/Objector | : | |

## AMENDED OPINION

In this case the court considers the Motion of Robert P. Conrad, Jr. and Lisa Lanocha Conrad (the "Debtors") Seeking Leave to Modify their Confirmed Chapter 13 Plan (the "Motion to Modify") pursuant to §1329(a)(1) of Title 11, U.S.C.[1] The Chapter 13 Trustee, Charles J. DeHart, III, Esquire (the "Trustee"), has objected to the Motion on multiple grounds, including a failure on the part of the Debtors to establish a "change in circumstances" from the time they filed their voluntary chapter 13 bankruptcy petition in this case.

## I.    Jurisdiction

This court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1334(a). This is a core proceeding pursuant to 28 U.S.C. §§157(b)(1), 157(b)(2)(A) and (b)(2)(L).

---

[1] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. §101 et seq. (the "Code")

## II.     Facts and Procedural History

On September 17, 2016, the Debtors filed their chapter 13 petition. Their schedules listed assets including a house, three vehicles, one utility trailer, a 17-foot boat, various firearms, clothing and costume jewelry, funds in several bank accounts, personal and household furnishings and an interest in a pension, all of which were exempted. Debtors' Schedule E listed $48,142.98 in priority unsecured debt and Schedule F listed $29,516.00 in nonpriority unsecured debt.

Schedule I showed that Mr. Conrad was employed as an Emergency Vehicle Driver for the Baltimore City Fire Department earning an average of $5,866.08 per month and that Mrs. Conrad received $3,593.66 per month from a pension or other retirement income.  Schedule I also listed other monthly income in the amount of $100.00 per month in the form of a monthly contribution from a step-daughter.  The Debtors' combined average monthly income therefore totaled $7,781.87 per month. The Debtors' Schedule J reflected expenses of $7,011.12 per month, leaving a monthly net income of $770.75 per month.

The Debtors' Forms 122C-1 and 122C-2 (collectively, the "Means Test") indicated they were above-median debtors and reflected a projected disposable income of $2,000.04 per month. The Debtors subsequently filed several plans, each of which were objected to by the Trustee because they did not submit all the Debtors' projected disposable income as calculated by the Means Test.  Unable to overcome the Trustee's objections, the Debtors eventually filed a Third Amended Chapter 13 plan which proposed a tiered payment schedule ranging from $1,415.00 to $2,460.00 per month over 48 months totaling $94,480.00.  Accounting for payments made by the Debtors under their prior plans, the total base amount of the Third Amended Plan was $105,990.00. Aside from small payments to secured creditors, the bulk of distributions under the Third Amended Plan were to be paid to the Debtors' attorney and unsecured creditors, who were expected to receive

Case 1:16-bk-03844-HWV     Doc 103     Filed 08/14/19     Entered 08/14/19 11:22:20     Desc
Main Document      Page 2 of 27

100% on their claims. The Debtors proposed to pay the secured creditors on their home directly. The Trustee did not object to confirmation of the Debtors' Third Amended Plan and it was confirmed by order entered on January 31, 2018.

Just over seven months later, on August 3, 2018, the Debtors filed their Motion to Modify. In their Motion to Modify, the Debtors stated that modification was necessary because the "Debtor has suffered a reduction in income and an increase in expenses." Motion to Modify 4a, ECF No. 76. Under the Motion to Modify, the Debtors' confirmed plan would be modified to provide for reduced payments of $25.00 per month for the months of July 2018 through September 2018 and a plan payment of $914.00 per month beginning in October 2018 and continuing through November 2021. Payments under the plan as modified totaled $34,807.00. Base funding of the plan was therefore reduced from $105,990.00 under the confirmed plan to $49,147.00 under the plan as modified. The proposed term of the plan was not altered. However, the Debtors' plan as modified did propose to reduce distributions to unsecured nonpriority creditors from 100% to approximately 21%. The Trustee objected to the Motion to Modify on August 23, 2018 asserting that it did not submit all the Debtors' projected disposable income as calculated by the Means Test.

The Debtors filed an amended Schedule J on August 24, 2018 demonstrating an increase of $340.81 in monthly expenses from the commencement of this case through the filing of the Motion to Modify. *See* Schedule J, ECF No. 25; *see also* Amendment to Schedule J, ECF No. 79. The Debtors next filed an Amended Schedule I on September 11, 2018 demonstrating that Mr. Conrad's monthly gross income had increased from $5,866.08 to $6,308.75, a difference of $442.67. The Amended Schedule I also demonstrated that Mr. Conrad's monthly net income had increased from $4,088.21 to $4,525.35, a difference of $437.14. Mrs. Conrad's income from her pension remained the same, but the contribution from the step-daughter did not appear on the

3

Amended Schedule I. In total, the amended Schedule I and Schedule J showed an overall decrease in monthly disposable income from $770.75 to $767.08, a difference of $3.67 per month.

Initial argument was heard on November 8, 2018, after which the parties filed briefs. A final hearing on the Motion to Modify was held on January 9, 2019 where additional arguments were heard. The matter is now ripe for a decision.

## II. Analysis

The Trustee argues that this court should not allow the Debtors to modify their confirmed chapter 13 plan without a showing of a substantial and unanticipated post-confirmation change in their financial circumstances. This change, according to the Trustee, must be established by comparing the Debtors' current financial condition to their financial condition as represented by their Means Test at the time of filing. The Debtors do not dispute that a substantial and unanticipated change in their financial circumstances must be shown to support the Motion to Modify, but they argue that any such change must be established by comparing their current financial condition to their financial condition as it existed at the time of the confirmation hearing, rather than as represented by the Means Test at the time of filing.

The parties, however, have not referenced any language in §1329(a) to support their shared position that a substantial and unanticipated change in financial circumstances is required to pursue modification of a confirmed plan. Nor is the court aware of any such language. The question thus presented is whether a party seeking post-confirmation modification of a plan pursuant to §1329 must first demonstrate that the debtors have experienced a substantial and unanticipated change in their financial circumstances and, if so, how that change is determined.

The United States Court of Appeals for the Third Circuit has not commented on §1329 modifications, though four other circuits and two additional Bankruptcy Appellate Panels

Case 1:16-bk-03844-HWV    Doc 103    Filed 08/14/19    Entered 08/14/19 11:22:20    Desc
Main Document      Page 4 of 27

("BAPs") have analyzed this issue. *See In re Murphy*, 474 F.3d 143, 151 (4th Cir. 2007); *In re Meza*, 467 F.3d 874 (5th Cir. 2006); *In re Barbosa*, 235 F.3d 31, 41 (1st Cir. 2000); *In re Witkowski*, 16 F.3d 739 (7th Cir. 1994); *In re Brown*, 219 B.R. 191, 195 (B.A.P. 6th Cir. 1998); *In re Powers*, 202 B.R. 618, 622 (B.A.P. 9th Cir. 1996). These cases are instructive. The parties here have not relied upon any of these circuit or BAP decisions, however, except to the extent that they are cited in *In re Eckert*, 485 B.R. 77 (Bankr. M.D. Pa. 2013) and *In re Mellors*, 372 B.R. 763 (Bankr. W.D. Pa. 2007), both of which the parties rely upon to support their position. *Eckert* and *Mellors* also cite numerous bankruptcy court decisions that support the proposition that a modification under §1329 is appropriate only upon a demonstration of a "change in circumstances." In relying upon these authorities, the parties present two issues. The first is whether the plain language of §1329(a) requires a threshold change in circumstance before a motion to modify can be brought under that section. The second is whether the common law doctrine of *res judicata* applies to the provisions of a confirmed plan, thus imposing a change in circumstance requirement before a motion to modify can be brought under §1329(a).

### A. The Statutory Language of §1329(a)

It is well settled that the first canon of statutory interpretation is that a court must begin, and where appropriate end, with the statutory language. "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then this first canon is also the last: judicial inquiry is complete." *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010) (citing *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, (1992) (internal citations and quotations omitted). To determine whether language is unambiguous, courts should "read the statute in its ordinary and natural sense." *Id.* (citing *Harvard Secured Creditors Liquidation Trust v. I.R.S.*, 568 F.3d 444, 451 (3d

5

Cir. 2009). A statutory provision is ambiguous only where the disputed language is "reasonably susceptible of different interpretations." *Id.* (citing *Dobrek v. Phelan*, 419 F.3d 259, 264 (3d Cir. 2005) (quoting *Nat'l R.R. Passenger Corp. v. Atchinson Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 473 n. 27, (1985))). Where a "statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (internal quotation marks omitted).

With this context in mind, the court turns to §1329(a). It is this section that initially governs modification of plans after confirmation:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to--
>> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>> (2) extend or reduce the time for such payments;
>> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or
>> (4) Reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor . . .
>
> * * * *

11 U.S.C. §1329(a). The statute appears quite plain in specifying that the debtor, the trustee, or the holder of an allowed unsecured claim may freely seek modification of a confirmed plan at any time after confirmation but before completion of payments to accomplish one of the four goals set forth in subsections §§1329(a)(1)-(4). The provision contains no language suggesting that a party seeking such a post-confirmation modification must first demonstrate that the debtor has experienced a substantial and unanticipated change in financial circumstance that warrants modification. Furthermore, the court senses no language in §1329(a) that is susceptible to an

6

interpretation other than the one proffered by the court above. The text of §1329(a) appears totally unambiguous in this regard.

It may be, however, that consideration of the arguments advanced in this case will reveal such ambiguity when the language of §1329(a) is considered within the broader context of other provisions of the Code, including §1327(a). Alternatively, the court may discover that the disposition required by the text of §1329(a) is absurd when considered in context and thus cannot be enforced according to its plain terms. If either of these circumstances prove true, then the court will have discretion to decide this matter accordingly. If, on the other hand, the language of §1329(a) is found to be unambiguous and the disposition of its text is not absurd, then it will be the sole function of this court to enforce the provision according to its terms. With this understanding, the court now turns to the authorities relied upon by the parties to support their position.

The litigants here do not rely upon the language of §1329(a) to support their position. Instead, they turn to case law for authentication. This approach is sensible as the unambiguous language of §1329(a) does not provide for any threshold requirement to modify a confirmed plan. Nearly all the circuit courts and BAPs considering this issue agree with this conclusion. *In re Meza*, 467 F.3d at 878 (citing *Witkowski* for the proposition that §1329's plain language imposes no substantial change requirement); *In re Barbosa*, 235 F.3d at 41 ("Faced with . . . the plain language of the statute, we are compelled to concur with . . . the *Witkowski* approach."); *In re Witkowski*, 16 F.3d at 742 ("By its terms, §1329 does not provide for any threshold requirement to modify a bankruptcy plan."); *In re Brown*, 219 B.R. at 195 ("§1329 does not contain a requirement for unanticipated or substantial change as a prerequisite to modification."); *In re Powers*, 202 B.R. at 622 ("The plain language of §1329 simply does not support a change in circumstances as a

7

prerequisite to modification."). Even those circuit decisions that support a threshold change in circumstance to modify a bankruptcy plan do not rely upon the text of §1329 to support their conclusion. *See In re Murphy*, 474 F.3d at 149 (relying upon prior case law rather than the plain language of §1329 for its holding that a substantial and unanticipated change in post-confirmation financial condition is required); *In re Arnold*, 869 F.2d 240, 241 (4th Cir. 1989) ("§1329(a) does not explicitly state what justifies [] a modification."). *Eckert* and *Mellors* also do not rely upon the plain language of §1329 to support their conclusions. In fact, this court is not aware of any decision that suggests that the plain language of §1329 requires a change in circumstance as a prerequisite to modification.

This court concludes that the position adopted by the majority of the above referenced circuit court and BAP decisions is correct. The language of §1329 is unambiguous and contains no requirement for a showing of unanticipated or substantial change as a prerequisite to modification. The inquiry does not end here, however, as the decisions relied upon by the parties have asserted that the doctrine of *res judicata* applies to the provisions of a confirmed plan and thus prevents modification under §1329 unless the movant first demonstrates a change in circumstance.

### B.  Effect of Confirmation Under §1327(a) and the Doctrine of *Res Judicata*

Section 1327(a) describes the effect of an order confirming a chapter 13 plan as follows:

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim or such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

11 U.S.C. §1327(a). The issue presented here is whether the language of §1327(a) formally invokes the common law doctrine of *res judicata* in full, thus preventing modification of a confirmed chapter 13 plan in the absence of a demonstrated change in circumstance. In *Mellors*,

8

the Bankruptcy Court for the Western District of Pennsylvania concluded that it does. *See Mellors*, 372 B.R. at 771. *Eckert* echoes this conclusion, primarily based upon the analysis of *Mellors*. Other courts have also found that the doctrine of *res judicata* bars modification of a confirmed plan without a showing of a change in circumstance.[2] Careful review of these cases, however, demonstrates that the reasoning upon which they rest and the authorities upon which they rely do not withstand scrutiny. These cases are therefore unpersuasive to this court.

The decisions supporting the position taken here each follow an unconvincing pattern. They begin by quoting the plain language of §1327(a) as referenced above. No portion of this language is ever challenged as being reasonably susceptible of different interpretations and the text is never accused of being ambiguous. Instead, courts uniformly agree that a confirmed plan is binding upon a debtor and each creditor pursuant to the plain and unambiguous text of §1327(a). The present court concurs with these observations.

Three things happen next. First, these decisions declare that a confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation. *See, e.g., Mellors*, 372 B.R. at 769. Second, courts authoring these decisions reason that the doctrine of *res judicata* should also prohibit modification of a confirmed plan based upon issues that were or could have been litigated at the time of the hearing on confirmation. *See, e.g., Id.* In other words, these courts conclude that §1329 conflicts with §1327(a) because of the preclusive effect of the doctrine of *res judicata*. *See, e.g., Id.* Third, to resolve this unnecessary and oddly self-imposed conflict, courts adopting this view rationalize that some threshold showing of a

---

[2] For example, the cases cited by *Eckert* and *Mellors* in support of this proposition include *In re Murphy*, 474 F.3d 143 (4th Cir. 2007); *In re Gallagher*, 332 B.R. 27 (Bankr. E.D. Pa. 2005); *In re Dunlap*, 215 B.R. 867 (Bankr. E.D. Ark. 1997); *In re Nelson*, 189 B.R. 748 (Bankr. D. Mn. 1995); *In re Butler*, 174 B.R. 44 (Bankr. M.D.N.C. 1994); *In re McNulty*, 142 B.R. 106 (Bankr. D.NJ. 1992); *In re Lynch*, 109 B.R. 792 (Bankr. W.D. Tn. 1989); *In re Leland*, 96 B.R. 990 (Bankr. D.S.D. 1989); *In re Gronski*, 86 B.R. 428 (Bankr. E.D. Pa. 1988).

material and unanticipated change in the debtor's circumstances is necessary to overcome the preclusive effect of *res judicata* before a party can seek modification of a confirmed plan under §1329. *See, e.g., Id.* The court has concerns with the above reasoning.

Consider first the declaration that a confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation. The first reported cases making this claim were decided in the years immediately following the passage of the Bankruptcy Reform Act of 1978. *See, e.g., In re Evans* 30 B.R. 530 (B.A.P. 9th Cir. 1983); *In re Clark* 31 B.R. 502 (Bankr. S.D. Oh. 1983); *In re Pizzullo*, 33 B.R. 740 (Bankr. E.D. Pa. 1983); *In re Willey*, 24 B.R. 369 (Bankr. E.D. Mich. 1982); *In re Flick*, 14 B.R. 912 (Bankr. E.D. Pa. 1981); *In re Moore*, 13 B.R. 914 (Bankr.D.Or. 1981); *In re Lewis*, 8 B.R. 132 (Bankr. D. Id. 1981). These initial cases share common characteristics that distinguish them from the case at hand. Factually, they all begin with confirmation of a plan. Procedurally, they each involve a post-confirmation pleading seeking some form of relief based upon pre-confirmation matters. Substantively, the relief sought is always in conflict with one or more provisions of the confirmed plan. Regarding the litigants, the pleading is almost always filed by a creditor provided for by the confirmed plan who is unhappy with their treatment. Importantly, and distinctive of the case here, these cases never involve a request under §1329 to modify the confirmed plan.

Given the strong commonality of circumstance among these cases, it is unsurprising to discover that the issue presented amongst them is likewise common. Generically, the issue presented is whether a creditor who is provided for in a confirmed plan possesses grounds to assert a good faith right to some form of relief based entirely upon pre-confirmation matters. The decisions in this "collateral attack" line of cases uniformly conclude that they do not. In so concluding, they each make the controversial declaration at issue here. That is, they declare that

10

an order of confirmation is *res judicata* as to all justiciable issues decided or which could have been decided at the hearing on confirmation. No proper authority is ever cited to support this declaration.[3] Equally important is the observation that no analysis is ever offered to explain or justify departing from the unambiguous text and narrow effect of the statute in favor of the imprecise language and broad effect of the common law doctrine of *res judicata*. Given the significant consequence of this departure upon post-confirmation modifications pursuant to §1329, some analysis of the reasons for doing so is warranted.

The purpose and effect of the language of §1327(a) in a contextual sense is to avoid the fragmented litigation of claims and to reinforce "the Bankruptcy Code's strong policy of favoring the finality of plans of reorganization." *See In re Sosnowski*, 314 B.R. 23, 26 (Bankr. D. Del. 2004).[4] By comparison, the doctrine of *res judicata* is intended to avoid piecemeal litigation of claims arising from the same events and to preclude the parties or their privies from relitigating issues that were or could have been raised in that action. *Sims v. Viacom, Inc.*, 544 F. App'x 99, 101 (3d Cir. 2013) (citing *Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir. 1999) (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998))). It is clear, then, that the purpose and

---

[3] The first case to make this declaration was *Lewis*, 8 B.R. at 137. It cites no authority in support of doing so. The second case to make this declaration was *Moore*, 13 B.R. at 916. It relies upon *Lewis* exclusively for its authority. The third case to make this declaration was *Flick*, 14 B.R. at 918 and it also cites *Lewis* exclusively as its authority. *Willey*, 24 B.R. at 375 was the fourth case to make this claim and it, like *Lewis*, cites no authority for its declaration. The fifth case to make this declaration was *Pizzullo*, 33 B.R. at 742, and it cites *Lewis* and *Flick* exclusively for support. The next case is *Clark*, 31 B.R. at 505–06 which cites no authority. *Evans* 30 B.R. at 531–32 followed *Clark* and it cites *Lewis, Willey, Flick,* and *Moore* for its authority. This pattern continues and snowballs into a web of interdependence among cases that, dating back to the earliest case, have no real authority to support the declaration at issue here. Interestingly, the first case involving a §1329 modification to make this declaration was *In re Abercrombie*, 39 B.R. 178 (Bankr. N.D. Ga. 1984). Not surprisingly, *Abercrombie* cites exclusively to *Flick* and *Lewis* for its authority in this regard.

[4] *See also In re Szostek*, 886 F.2d 1405, 1409 (3d Cir. 1989) ("The binding effect of a chapter 13 plan extends to any issue actually litigated by the parties and any issue necessarily determined by the confirmation order"); *In re Dickey,* 293 B.R. 360, 363 (Bankr. M.D. Pa. 2003) ("The language of a Chapter 13 plan, once confirmed, is to control the debtor/creditor relationship thereafter, even if the terms of the Plan violate the Code."); *In re York*, 250 B.R. 842, 844 (Bankr. D. Del. 2000) ("[t]he finality of the terms of a Chapter 13 [plan] and its treatment of claims upon confirmation is well established .... 'the finality of the bankruptcy confirmation order bar[s] the creditor from litigating its claim.'") (citations omitted).

11

effect of §1327(a) coincides significantly with the doctrine of *res judicata*. Indeed, *res judicata* appears to perfectly overlap the effect of §1327(a) within the context of collateral attacks upon a confirmed plan. This undoubtedly is the reason that courts deciding matters exclusively within that framework have declared the language of §1327(a) to be equivalent with the general doctrine of *res judicata*.[5] However, shared purpose and parallel effect in a specific context is not enough for this court to conclude that §1327(a) formally invokes the full preclusive effect of the doctrine of *res judicata* in all contexts. While no obvious harm results from linking the effect of §1327(a) to *res judicata* within the context of a collateral attack upon a confirmed plan, the unintended consequence of doing so within the context of a post-confirmation modification pursuant to §1329 is both apparent and problematic.

The most apparent consequence of doing so is that it renders §1327(a) incompatible with §1329. This approach violates a basic and fundamental canon of statutory interpretation. Under the harmonious-reading canon, the provisions of a statute should be interpreted in a way that renders them compatible, not contradictory. *See United States v. Bass*, 404 U.S. 336, 344 (1971) (recognizing that "courts should interpret a statute with an eye to the surrounding statutory landscape and an ear for harmonizing potentially discordant provisions."). "[I]t is a 'cardinal rule that a statute is to be read as a whole,' in order not to render portions of it inconsistent or devoid of meaning." *Matter of Glenn*, 900 F.3d 187, 190 (5th Cir. 2018) (citing *Zayler v. Dep't of Agric. (In re Supreme Beef Processors, Inc.)*, 468 F.3d 248, 253 (5th Cir. 2006) (en banc) (quoting *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385 n.7, (2003)) (citation omitted)).

---

[5] *See In re Szostek*, 886 F.2d at 1408 (stating in dicta that "[u]nder § 1327, a confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation.)

The declaration that an order of confirmation fully invokes the common law doctrine of *res judicata* not only violates the harmonious-reading canon, it also violates another canon of statutory interpretation. Recall that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then this first canon is also the last: judicial inquiry is complete." *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010) (citing *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (internal citations and quotations omitted)). Rather than reading the text of §1327(a) and §1329 in their most ordinary and natural sense, which renders them in near perfect harmony, the decisions relied upon by the litigants here strangely assign a meaning to the text of §1329(a) that the words will not fully bear. Specifically, while there appears to be some justification for a comparison of the effect of §1327(a) and the common law doctrine of *res judicata* in the context of a collateral attack upon a confirmed plan, that justification is entirely absent in the context of a post-confirmation modification sought pursuant to §1329(a). Indeed, the justification is not only absent in this context, extending the effect of §1327(a) to include the full effect of *res judicata* actually does violence to the natural harmony that exists between that provision and §1329(a). The effect of adopting this view, therefore, is to artificially place the two provisions in conflict. This approach is entirely unnecessary and cannot be justified.

The above conclusion is supported by another well-established concept. The common law principle of *res judicata* does not apply "when a statutory purpose to the contrary is evident." *In re Witkowski*, 16 F.3d 739, 744–45 (7th Cir. 1994) (internal quotations omitted) (quoting *Astoria Federal Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104 (1991), quoting *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952)). Congress need not state precisely any intention to overcome the

application of *res judicata*. *Id.* Rather, if the plain language of the statute makes it clear that *res judicata* does not apply, it is sufficient. *Id*. Such is the case here.

In *Witkowski*, the Chapter 13 trustee moved to modify the debtor's confirmed plan after some unsecured creditors failed to file claims to increase the percentage payable to those creditors who did file claims. The bankruptcy court granted the motion, and the debtor appealed on the basis that the Trustee had failed to demonstrate a change in his financial circumstances as required by the *res judicata* effect of §1327(a). The United States District Court for the Northern District of Illinois affirmed the bankruptcy court's decision, and further appeal was taken. The United States Court of Appeals for the 7th Circuit held that modification of the plan was not an abuse of the bankruptcy court's discretion, despite a lack of change in the debtor's financial circumstances.

The *Witkowski* court began its analysis by recognizing that §1327 of the Code provides that "the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." *Witkowski*, 16 F.3d at 745 (quoting 11 U.S.C. §1327(a)). The court next observed that Congress "also provided a mechanism to change the binding effect of §1327 when it passed §1329 to allow for modifications." *Id*. Based upon this observation, the *Witkowski* court opined that if Congress "'intended for a confirmation hearing to have res judicata effect, there would be little or no reason for Section 1329.'" *Id*. (quoting *In re Williams,* 108 B.R. 119, 123 (Bankr. N.D. Miss. 1989)). Indeed, noted the court in *Witkowski*, "Congress could have specifically imposed a precondition to a §1329 modification, but it did not do so. In fact, where it deemed appropriate, Congress has specifically provided a 'change in circumstance' prerequisite under another provision of the Bankruptcy Code. §1328(b)." *Id*. (citing *In re Phelps,* 149 B.R. 534, 538 (Bankr. N.D. Ill. 1993); *Powers,* 140 B.R. at 479 n. 3). Based upon the foregoing, the

14

*Witkowski* court concluded that "[t]his provision makes it clear that Congress did not intend the common law doctrine of res judicata to apply to §1329 modifications." *Witkowski*, 16 F.3d at 745. The present court concurs with this analysis.

The Trustee here argues that without the requirement of a threshold showing of a change in the debtor's financial circumstances justifying a modification, bankruptcy courts will be inundated with motions to modify solely for the purpose of circumventing the Means Test. For the reasons that follow, this court does not agree with the Trustee's assessment. Moreover, even if there were some justification for this concern, courts cannot re-write statutes. Judges do not "have free rein to impose rules of preclusion, as a matter of policy, when the interpretation of a statute is at hand." *Id.* (quoting *Astoria Federal Sav. And Loan Ass'n v. Soliminio,* 501 U.S. 104, 108 (1991)).

Initially, the court notes that a modification under §1329 is only allowed in four limited circumstances. The first is to "increase or reduce the amount of payments on claims of a particular class provided for by the plan." 11 U.S.C. §1329(a)(1). The second is to "extend or reduce the time for such payments." 11 U.S.C. §1329(a)(2). The third is to "alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan." 11 U.S.C. §1329(a)(3). The fourth is to "reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor . . . ." 11 U.S.C. §1329(a)(4). Accordingly, a movant seeking modification under §1329(a) must initially meet one of these four criteria or the request will not be allowed.

Next, the option to modify a plan pursuant to §1329(a) is only available if §§1322(a), 1322(b), 1325(a) and 1323(c) of the Code are met. 11 U.S.C. §1329(b)(1); *see Witkowski*, 16 F.3d

Case 1:16-bk-03844-HWV    Doc 103    Filed 08/14/19    Entered 08/14/19 11:22:20    Desc
Main Document    Page 15 of 27

at 745 (citing *In re Davis,* 34 B.R. 319, 320 (Bankr. E.D. Va. 1983) (additional citations omitted). One important limit to motions pursuant to §1329 comes under §1325(a)(3), which requires the plan to be proposed in good faith. As if to directly address the Trustee's concern above, courts have held that "[a]ctions designed to circumvent the Bankruptcy Code constitute an abuse of the provisions, purpose, and spirit of the bankruptcy law and therefore demonstrate a lack of good faith." *In re Swigert*, 601 B.R. 913, 924 (Bankr. M.D. Pa. 2019) (citing *In re Myers*, 491 F.3d 120 (3d Cir. 2007); *see also In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000)). Consider also the case of *In re McNulty,* 142 B.R. 106, 110 (Bankr. D. N.J. 1992) where the court denied modification finding that the modified plan had not been proposed in good faith. Moreover, all proposed modifications need not be approved and in practice not all modifications are approved. *West v. Costen,* 826 F.2d 1376, 1379 (4th Cir. 1987) (denying creditor's petition for modification).

In sum, the plain and unambiguous language of §1329 denies any threshold change in circumstance requirement and clearly demonstrates that the common law doctrine of *res judicata* does not apply to modifications. This observation remains true when the language of §1329 is considered within the broader context of other provisions of the Code, including §1327(a). Moreover, the disposition required by the text of §1329 is not absurd. Therefore, it is the sole function of this court to enforce it according to its terms. This is not to say that a bankruptcy court may not consider whether a change in circumstances occurred in determining whether to modify a bankruptcy plan; but, §1329 and the doctrine of *res judicata* do not require a threshold showing of a change in circumstances. Accord *Meza*, 467 F.3d 874; *Barbosa*, 235 F.3d at 41; *Witkowski*, 16 F.3d 739; *Brown*, 219 B.R. at 195; *Powers*, 202 B.R. at 622.

16

## C.     The Applicable Standard

It is well settled that the proponent of a plan modification bears the burden of proof that the statutory requirements have been met.  *See Eckert*, 485 B.R. at 80.  The statutory requirements for modification of a confirmed plan are set forth in §1329(a) and (b).   Section 1329(a) is referenced above and sets forth the four limited circumstances under which a party may seek modification of a confirmed plan.   Section 1329(b) provides that "[s]ections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section." 11 U.S.C. §1329(b)(1).   Collectively, these sections provide the appropriate standard against which a motion to modify must be measured to determine if it will be allowed.[6]  The court will now apply this standard to the present case.

### 1.      The Gateway Conditions of §1329(a)

The first issue presented in this analysis is whether the current Motion to Modify meets the gateway conditions of §1329(a).   Section 1329(a)(1) provides, in relevant part, that "any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor . . . to – increase or reduce the amount of payments on claims of a particular class provided for by the plan."   §1329(a)(1).   Here, there is no dispute that the Motion to Modify was filed by the Debtors at a time after confirmation of their Third Amended Plan but before the completion of payments under such plan.   The timing of the Motion to Modify and the party pursuing it therefore satisfy the initial conditions of §1329(a).   Additionally, the court notes that the stated purpose of the Motion to Modify is to decrease the plan basis from

---

[6] Section 1325(b) is not mentioned in §1329(b).  This court concludes that the failure to reference §1325(b) in §1329(b) is intentional and that §1325(b) therefore should not be considered in connection with a request for modification under §1329.  In so concluding, this court rejects the argument that §1325(a), by its own terms, incorporates §1325(b), making the latter subsection applicable to modifications.  *See In re Grutsch*, 453 B.R. 420 (Bankr. D. Kan. 2011); *see also In re Stonier,* 417 B.R. 702 (Bankr. M.D. Pa. 2009); *In re Turek*, 346 B.R. 350 (Bankr. M.D. Pa. 2006).

$105,990.00 to $49,147.10. Mot. To Modify 5, ECF No. 76. This change reduces the amount of payments to the class of unsecured claims as originally provided for in the Debtors' Third Amended Plan. The stated purpose of the Motion to Modify and its intended effect are therefore consistent with §1329(a)(1). Thus, the Motion to Modify in this case meets the gateway conditions of §1329(a).

### 2. The Compulsory Conditions of §1322(a)

The next issue presented is whether the Motion to Modify meets the compulsory provisions of §1322(a). The compulsory provisions of §1322(a) generally require a debtor to submit all or such portion of future earnings or income to the trustee as is necessary for the execution of the plan, to provide for the full payment of all claims entitled to priority under §507 of the Code,[7] and to provide for the same treatment for each claim within a particular class (if the plan classifies claims). 11 U.S.C. §1322(a). Importantly, nothing in the text of §1322(a)(1) itself requires that a chapter 13 plan propose to submit any portion of the future income of the debtor to the control of the trustee, except to the extent that the plan is to be funded from future income. Here, the Trustee asserts that the amount necessary to provide for the full payment of all claims entitled to priority under §507 of the Code in this case is $42,010.46. According to the plan as modified, the Debtors have already paid $14,340.00 to the Trustee under their prior plans and propose to pay an additional $34,807.00 to the Trustee through three monthly payments of $25.00 each and thirty-eight payments of $914.00 each. The aggregate sum of these payments is $49,147.00, which is enough for the execution of the plan and to provide for the full payment of all claims entitled to priority under §507 of the Code. The proposed modified plan also provides for the same treatment for all

---

[7] Unless the holder of such a claim agrees to different treatment or, pursuant to §1322(a)(4), the plan may pay less than the full amount of any §507(a)(1)(B) priority claim if all of the debtor's projected disposable income for a 5-year period will be applied to make payments under the plan. *See* 11 U.S.C. §1322(a)(4).

18

claims within a particular class. Modified Plan, ECF No. 76, Ex. A. Accordingly, the plan as modified satisfies the compulsory provisions of §1322(a).

### 3. Section 1323(c) and the Optional Provisions of §1322(b)

Importantly, §1323(c) provides that any holder of a secured claim that has already accepted or rejected a plan is deemed to have likewise accepted or rejected the plan as modified, unless the modification changes the treatment of the secured claim and the holder changes its prior acceptance or rejection. 11 U.S.C. §1323(c). The Debtors' confirmed Third Amended Plan references four secured creditors, none of which objected to their treatment under the Debtors' confirmed Third Amended Plan. The plan as modified here does not alter the treatment of these creditors and they are therefore deemed to have accepted the plan as modified under §1323(c). To the extent this section is relevant, the court finds that the plan as modified complies with §1323(c).

The optional provisions of a modified plan are set forth in §1322(b) and generally empower a debtor to affect the rights of creditors by extending, curing, or modifying repayment terms through a plan. At the discretion of the debtor, these provisions may or may not be included in the contents of a plan. 11 U.S.C. §1322(b). Because these provisions are discretionary and not compulsory, and further because no objection to allowance of the plan as modified under this section has been filed, the court finds that the plan as modified complies with the provisions of §1322(b).

### 4. The Confirmation Provisions of §1325(a)

Finally, §1325(a) contains the standards for confirmation of a plan which are made applicable to these proceedings by §1329(b). These standards include the "feasibility test" in §1325(a)(6), the "best interests of creditors test" in §1325(a)(4), and the "good faith test" in

§1325(a)(3). Each of these paragraphs are implicated here and the court therefore must determine whether the modified plan meets these requirements.

### a)      The Feasibility Test of §1325(a)(6).

As to the feasibility test, a chapter 13 plan "can only be confirmed by the bankruptcy court if 'the debtor will be able to make all payments under the plan and to comply with the plan.'" *In re Cassim*, 594 F.3d 432, 435 (6th Cir. 2010) (quoting §1325(a)(6)).  Pursuant to the plan as modified, the Debtors are obligated to make a monthly payment in the amount of $914.00 to the Trustee beginning October 1, 2018 and ending on November 30, 2021.  Modified Plan 1(A)(1), ECF No. 76, Ex. A.  As set forth in greater detail below, this court calculates the Debtors' disposable income to be between $1,141.38 and $1,359.48.[8]  This calculation demonstrates the Debtors' ability to make all payments under the plan as modified and to comply with the plan in all respects.  The plan as modified is therefore feasible.

### b)      The Best Interest of the Creditors Test of §1325(a)(4).

To satisfy the best interest of the creditors test, a plan must provide for property to be distributed in settlement of each allowed unsecured claim in an amount not less than the amount that would be paid if the estate of the debtor were liquidated under chapter 7.  11 U.S.C. §1325(a)(4); *see also Szostek*, 886 F.2d 1404.  In the present case, the court notes that the Debtors' confirmed Third Amended Plan provides that "[t]he Debtor estimates that the liquidation value of this estate is $_____."  Third Amended Plan, 1(B)(1) (blank line appears in original).  The reference to an actual dollar amount was presumably left blank because the Debtor estimates a liquidation value of $0.00.  This presumption is reinforced by the next provision of the Debtors' confirmed Third Amended Plan which indicates that "[n]o assets will be liquidated" under the

---

[8] *See infra* Section (C)(4)(c)(iii).

plan.  There were no objections to confirmation of the Debtors' Third Amended Plan based on the best interest of the creditors test and the plan was confirmed with these provisions.  The plan as modified in this case contains these exact same provisions.  Likewise, there have been no objections to the modified plan based upon the best interests of the creditors test under §1325(a)(4) and the court has no reason to believe that the modified plan violates this requirement.[9]  Therefore, this court finds that the plan as modified satisfies the best interests of the creditors test.

c)      <u>The Good Faith of the Plan Test Under §1325(a)(3)</u>

Whether the modified plan is being proposed in good faith is also at issue.  In the case of *In re Sunahara,* 326 B.R. 768 (B.A.P. 9th Cir. 2005), the BAP for the 9th Circuit held that the good faith of a debtor in proposing a plan modification is a significant factor for consideration by the bankruptcy court.  *In re Sunahara,* 326 B.R. at 781–82.  Determining good faith in this context "necessarily requires an assessment of a debtor's overall financial condition including, without limitation, the debtor's current disposable income, the likelihood that the debtor's disposable income will significantly increase due to increased income or decreased expenses over the remaining term of the original plan, the proximity of time between confirmation of the original plan and the filing of the modification motion, and the risk of default over the remaining term of the plan versus the certainty of immediate payment to creditors." *Id.*; *see also In re Turek*, 346 B.R. 350 (Bankr. M.D. Pa. 2006) (adopting the standard for good faith as set forth in *Sunahara*). This is the standard the court will apply to the present case.

The Debtors here claim to have "suffered a reduction in income and an increase in expenses" which caused them to file the instant Motion to Modify.  Mot. to Modify, ECF No. 76. If established, these circumstances would suggest a deterioration of the Debtors' overall financial

---

[9] This is true regardless of the date chosen to evaluate this condition.  *See In re Turek*, 346 B.R. 350, n. 11.

21

condition. However, since filing their Motion to Modify, the Debtors admit to experiencing an increase in their income from the time they filed their petition. They now argue that the "reduction in income" claimed in their Motion to Modify is established by comparing their current financial condition to their financial condition at the time of the confirmation hearing, rather than at the commencement of this case. The Trustee counters by arguing that any change in income must be established by comparing the Debtors current financial condition to their financial condition at the commencement of this case, rather than as it existed at the time of the confirmation hearing. For the reasons that follow, the Trustee is correct in this case.

Consider §1325(b), which provides that a bankruptcy court may not approve a plan if it has been objected to by the trustee or the holder of an allowed unsecured claim, unless the plan satisfies the conditions of §1325(b)(1)(A) or §1325(b)(1)(B).[10] When read together, these two provisions allow a plan to be confirmed over such an objection, but only if it pays 100% of all allowed unsecured claims or it pays all "projected disposable income"[11] to unsecured creditors as calculated by the Means Test, whichever is less. Mutual consideration of the conditions of these provisions therefore demonstrates that a debtor's projected disposable income, which is a calculation based upon his or her financial condition as of the commencement of a case, is the controlling point of reference for proper plan funding in nearly every circumstance.[12] This concept guides the court here.

---

[10] Section 1325(b)(1)(A) requires that "the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim". 11 U.S.C. §1325(b)(1)(A). Section 1325(b)(1)(B), on the other hand, requires a plan to provide that "all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payment to unsecured creditors under the plan." 11 U.S.C. §1325(b)(1)(B).

[11] Although "projected disposable income" is not defined by the Code it is generally understood to mean "disposable income" multiplied by the "applicable commitment period," both of which are defined by the Code, and adjusted for any "known or virtually certain" changes to a debtor's income or expenses over the same period. *See* §§ 1325(2) and 1325(b)(4); *See also Hamilton v. Lanning*, 560 U.S. 505, 517 (2010).

[12] A court order holding otherwise pursuant to *Hamilton v. Lanning*, for instance would be an exception. Such an order was not entered in this case prior to confirmation of the Debtors' Third Amended Plan.

22

Regarding the conditions of §1325(b)(1)(A) and §1325(b)(1)(B), all chapter 13 debtors above a certain level of income are required to calculate and submit their monthly disposable income as of the commencement of their case. This figure, if required, appears on line 45 of a debtor's Form 122C-2 and is used to calculate their "projected disposable income" as referenced in §1325(b)(1)(B). The Debtors in the present case are among those who were required to calculate and submit this information to the court. According to line 45 of their Form 122C-2, the Debtors' monthly disposable income was $2,000.04 and their projected disposable income was $164,368.00 as of the commencement of this case. Debtors' Schedules, ECF 25, p. 46, line 45. This was the amount of plan funding required for compliance with §1325(b)(1)(B). By way of comparison, the amount necessary to pay all allowed unsecured claims in compliance with §1325(b)(1)(A), including a commission to the Trustee, was $105,900.00.[13] *See* Trustee's Br. 2.

It is a matter of record that the Debtors' Second Amended Plan could not be confirmed over the Trustee's Objection because it did not comply with either §1325(b)(1)(A) or §1325(b)(1)(B). *See* Trustee's Obj. to Second Amended Plan, ECF No. 49. The Debtors responded to the Trustee's objection by filing their Third Amended Chapter 13 Plan. Using the projected disposable income figure of $164,368.00 as a reference point, the Debtors elected to fund their Third Amended Plan in the lesser amount of $105,990.00. This amount pays the allowed unsecured claims in full, including a commission to the Trustee, and thus complies with §1325(b)(1)(A). It is both reasonable and proper to proceed this way as doing so funds the plan in an amount equal to the lesser of the amount required by §1325(b)(1)(A) or §1325(b)(1)(B). Doing so also establishes that the Debtors' projected disposable income, which is based upon their

---

[13] This calculation was performed by the Debtor and is adopted by the court for purposes of this Opinion.

Case 1:16-bk-03844-HWV    Doc 103    Filed 08/14/19    Entered 08/14/19 11:22:20    Desc
Main Document    Page 23 of 27

financial condition at the commencement of their case, was the controlling point of reference for the proper funding of their Third Amended Plan at the time of confirmation.[14]

In view of the foregoing, this court concludes that the Debtors' financial condition at the commencement of this case was the controlling point of reference for plan funding at the confirmation hearing. Because of this, the Debtors' financial condition at the commencement of this case should also serve as the proper reference point for determining whether the Debtors have experienced a change in their financial condition for purposes of their Motion to Modify. Having determined the appropriate point of reference, the court will now evaluate the Debtors' claim that they have "suffered a reduction in income and an increase in expenses."

### i.        The Debtors' Average Total Monthly Gross Income

The Debtors' disclosed their average total monthly gross income as of the commencement of their case on their Form 122C-2. This average total monthly gross income, which is based upon a six-month sampling period beginning February 1, 2016 and ending on July 31, 2016, is listed on line 39 of Form 122C-2 in the amount of $10,105.35. This number is calculated by adding the Debtor's average total monthly gross income from wages during that time in the amount of $6,511.69 and the Joint Debtor's average total monthly gross income from her pension during the same time period in the amount of $3,593.66. By way of comparison, the Debtors also provided evidence of their average total monthly gross income as of the filing of the Motion to Modify in the form of pay advices from their employment and pensions, respectively. Ex. A (Paystubs), ECF No. 95. The average total monthly income, which is based upon a seven-or-eight-month sampling period beginning on either February 1, 2018 or January 1, 2018 and ending on August 31, 2018,

---

[14] The Trustee appears to have agreed and probably performed the same §1325(b)(1) analysis to determine if an objection to the Debtors' Third Amended Plan was proper. This reinforces the concept that a debtor's projected disposable income is a controlling reference point for proper plan funding at confirmation.

is calculated in the range of $10,236.62 to $10,532.52. A simple comparison of the Debtors'

average total monthly gross income at the commencement of this case with their average total

monthly gross income as of the filing of the Motion to Modify demonstrates that they have not

suffered a decrease in their average total monthly gross income from the commencement of this

case. To the contrary, they have experienced an increase in their average total monthly gross

income of at least $131.27, and as much as $427.17, depending on which sampling period is used.

This factor therefore weighs against allowing modification of the Debtors' confirmed plan.

### ii. The Debtors' Amended Monthly Expenses

The Debtors also claim an increase in their monthly expenses as a basis for their Motion

to Modify. In support of this claim, the Debtors advocate a comparison of their expenses as listed

on their original Schedule J with their expenses as listed on their Amended Schedule J filed on

August 24, 2018. A comparison of these documents reveals an increase of $340.81 in monthly

expenses from the commencement of this case through the filing of the Motion to Modify. *See*

Schedule J, ECF No. 25; *see also* Amendment to Schedule J, ECF No. 79. This represents a 4.86%

increase in total monthly expense, nearly half of which can be accounted for by increases in

discretionary spending. *See* ECF No. 79, p. 2, lines 13 and 21. Regardless of the nature of the

increase, the court considers this change to be nominal. Therefore, this factor does not support

allowing modification of the Debtors' confirmed chapter 13 plan.

### iii. The Debtors' Net Income Under *Sunahara*

Finally, *Sunahara* suggests that examination of the Debtors' net income as of the filing of

the Motion to Modify should be considered in the context of the Debtors' good faith. Regarding

this factor, the court need only deduct the expenses listed on the Debtors' Amended Schedule J

from the Debtors' average total monthly gross income, each as discussed above. Doing so yields

an average total monthly net income ranging from $1,141.38 to $1,359.48. This calculation represents the Debtors' available monthly disposable income for purposes of their Motion to Modify. The Debtors' plan as modified proposes a monthly payment of only $914.00, which is between $227.38 and $445.48 less than the Debtors' available disposable income. The plan as modified, therefore, does not commit all the Debtors' monthly disposable income to the plan for the benefit of their creditors.[15]

Based upon the foregoing analysis, this court finds that the plan as modified lacks good faith under *Sunahara* and *Turek*. It fails to commit all the Debtors' monthly disposable income to the plan for the benefit of their creditors as reflected by the calculations above. Therefore, the Motion to Modify must be denied. This is not to say that the Motion to Modify would have been allowed if the Debtors had proposed a payment in the range referenced above. There are several other factors, some of which are set forth in *Sunahara*, that have not been examined here. Rather, this ruling is limited to the specific facts of this case.

### III. Conclusion

In conclusion, this court finds that the plain and unambiguous language of §1329 denies any threshold change in circumstance requirement and clearly demonstrates that the common law doctrine of *res judicata* does not apply to modifications. This observation remains true when the language of §1329 is considered within the broader context of other provisions of the Code, including §1327(a). Moreover, the disposition required by the text of §1329 is not absurd. Therefore, it is the sole function of this court to enforce it according to its terms. This is not to say that a bankruptcy court may not consider whether a change in circumstance occurred when determining whether to modify a confirmed plan. To the contrary, it can and in many instances it

---

[15] Courts have held that the debtor's best effort is a necessary element of good faith under §1325(a)(3) in the context of a request to modify pursuant to § 1329. *See In re Rimgale*, 669 F.2d 426, 432 (7th Cir. 1982).

26

should. However, as the court considers such a request it should be mindful that §1329 and the doctrine of *res judicata* do not require a threshold showing of a change in circumstance. In addition, this court concludes that the Debtors' financial condition as set forth on their Means Test was the controlling point of reference for plan funding at the confirmation hearing. Because of this, the Debtors' financial condition as set forth on their Means Test also serves as the proper reference point for determining whether the Debtors have experienced a change in their financial condition for purposes of their Motion to Modify. Lastly, the court finds that the plan as modified was not proposed in good faith as required by §1325(a)(3) because it fails to commit all the Debtors' monthly disposable income to the plan for the benefit of unsecured nonpriority creditors. The Motion to Modify must therefore be denied.

   An appropriate order will follow.

Dated: August 14, 2019     By the Court,

                 Henry W. Van Eck, Bankruptcy Judge (JH)